UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HOUSTON McLANE COMPANY, INC., D/B/A HOUSTON ASTROS BASEBALL CLUB, § § § § Plaintiff, § v. § CIVIL ACTION NO. H-06-1508 § CONNECTICUT GENERAL LIFE § INSURANCE COMPANY, § § Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for a Separate Trial and Abatement of Plaintiff's Extra-Contractual Claims (Doc. # 8). For the reasons set forth below, Defendant's Motion is **DENIED WITHOUT PREJUDICE**.

### I. BACKGROUND

Plaintiff Houston McLane Company, Inc., d/b/a Houston Astros Baseball Club ("Astros"), purchased a total disability insurance policy from Defendant Connecticut General Life Insurance Company ("Connecticut General") that covered Astros first baseman, Jeff Bagwell. The policy provided that if Mr. Bagwell became totally disabled and the terms and conditions of the policy were met before the policy terminated on January 31, 2006, the Astros would recover under the policy.

Mr. Bagwell suffers from a degenerative arthritic condition in his right shoulder. He was placed on the disabled list in May 2005, and he underwent surgery on his shoulder in June 2005. After a period of physical therapy and rehabilitation, Mr. Bagwell was activated and returned to

the Astros' roster in September 2005 for the end of the regular season, as well as the playoffs and World Series.

After the conclusion of the 2005 season, the Astros directed Mr. Bagwell to be examined by a sports medicine physician. The physician concluded that Mr. Bagwell was "disabled completely from playing professional baseball" (Pl.'s Opp. 4.), and based on that evaluation, the Astros filed a claim with Connecticut General for Mr. Bagwell's total disability on January 24, 2006.

In February 2006, Mr. Bagwell reported to Astros spring training, and Connecticut General subsequently denied the Astros' disability claim relating to Mr. Bagwell on March 13, 2006. Then on March 25, 2006, the Astros and Mr. Bagwell announced that he would again be placed on the team's disabled list, where he has since remained.

Based on the denial of their insurance claim, the Astros filed suit against Connecticut General, alleging breach of contract, violations of the Texas Insurance Code, and breach of the common law duty of good faith and fair dealing. The latter two claims—violations of the Texas Insurance Code and breach of the duty of good faith and fair dealing—are extra-contractual claims, and Connecticut General now seeks a separate trial for and abatement of these extra-contractual claims until after the breach of contract claim is decided.

## II. DISCUSSION

This issue of whether separate trials are warranted in this diversity action is governed by federal law. 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 2387 (2d ed. 2006) ("The separate trials rule is a valid regulation of procedure. Therefore, state law is not controlling even in diversity cases." (internal citations omitted)); *see also Lumbermens Mut. Cas. Co. v. Bell*, 289 F.2d 124, 126 (5th Cir. 1961) (holding that the separate trial issue in a

diversity case was a procedural matter governed by federal law rather than state law). Nevertheless, the Court may look to Texas law to aid it in determining whether separate trials should be ordered. *Greil v. Geico*, 2001 WL 1148118, at *1 (N.D. Tex. Sept. 18, 2001) (explaining that "Texas courts are in the best position to determine when claims arising under Texas law warrant separate trials"). Thus, while federal law ultimately controls this issue, Texas law may also be considered.

Federal Rule of Civil Procedure 42(b) provides that a court has discretion to order separate trials of claims "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."[1] Thus, the two primary factors to be considered in determining whether to order separate trials are efficient judicial administration and potential prejudice. Separation of issues for separate trials is "not the usual course that should be followed," *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993), and the burden is on the party seeking separate trials to prove that separation is necessary. Wright & Miller, § 2388. In this case, then, Connecticut General bears the burden of proving that a separate trial is necessary, but, as explained below, it has not met that burden.

### A. Judicial Efficiency

Connecticut General urges that separate trials in this case would promote judicial economy because, if Connecticut General is successful in defending the breach of contract claim, there can be no liability on the extra-contractual claims. *See Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) ("As a general rule there can be no claim for bad faith when an

---

[1] Though the distinction is occasionally blurred by both courts and litigants, ordering separate trials under Rule 42(b) is different from ordering severance under Rule 21. Separate trials generally result in just one judgment, while severed claims become entirely independent actions with independent judgments. *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993); *see also* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 2387 (2d ed. 2006). Thus, while some cases cited in this opinion may use severance language, all actually address the issue of separate trials under Rule 42(b).

3

insurer has promptly denied a claim that is in fact not covered."). Thus, Connecticut General urges that trying the breach of contract claim separately (and prior to the extra-contractual claims) could save the Court and the parties significant time and resources preparing for and hearing the extra-contractual claims when such effort may never be necessary.

It is true that other courts have ordered separate trials of extra-contractual insurance claims on these grounds. *See, e.g., O'Malley v. U.S. Fid. & Guar. Co.*, 776 F.2d 494, 501 (5th Cir. 1985) ("Since a recovery on the bad faith claim would not have been possible unless [plaintiff] prevailed on his coverage claim, the district court acted correctly in bifurcating the issues to avoid prejudice and to expedite the trial."); *U.S. Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 673 (Tex. App.—Houston 1993, no writ) ("It would be a waste of the court's, the jury's, the parties', and the attorneys' time to hear evidence on the bad faith claims when a finding in the contract lawsuit could be peremptorily dispositive."). However, in the context of this case, such reasoning is unconvincing. Separate trials will save time and resources only if, in fact, Connecticut General prevails on the contractual claim. If it does not, then a great deal of time will be wasted retaking depositions, engaging in additional discovery, empanelling a new jury, and conducting a second trial. This is particularly so when, as here, many of the same facts and witnesses are relevant to both the contractual and extra-contractual issues. *See Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (noting that contractual and extra-contractual insurance claims under Texas law are "largely interwoven" and that "most of the evidence introduced will be admissible on both claims"). For example, the claims agent will have relevant knowledge of both the scope of the Astros' insurance contract, as well as how the Astros' claim regarding Mr. Bagwell was handled internally. Efficiency militates in favor of gathering all of this agent's knowledge in one deposition and having him or her testify at only one trial.

4

The judicial economy argument is therefore a wash: If Connecticut General prevails on the contract claim, then time and resources will be saved by conducting separate trials. On the other hand, if the Astros prevail, then time and resources will be wasted. At this stage in the litigation, the Court is not in any position to guess which outcome might be more likely, so it cannot order separate trials on the supposition that doing so would promote judicial efficiency.

**B. Potential Prejudice**

Connecticut General has also failed to carry its burden of proving that separate trials are necessary to avoid prejudice. In fact, it has not identified any particularized prejudice that it will suffer as a result of trying the contractual and extra-contractual claims together. Connecticut General claims that it will be prejudiced by simply "having to defend its position that the claim is not covered while at the same time having to show how it attempted to investigate and analyze the claim in good faith." (Def.'s Mot. 7.) It specifically objects to having to present evidence of its "internal investigation and analysis of the claim and internal settlement strategies." (Def.'s Mot. 8.) However, the Court does not believe that evidence of Connecticut General's internal investigation and analysis of the Astros' claim will contradict its position that the claim is not covered under the contract. An insurance company is obligated to investigate a claim before denying coverage, and thus evidence that Connecticut General investigated the Astros' claim should not substantially prejudice it in its assertion that the claim is not covered. The Court is persuaded that any remote chance of prejudice on this score can be cured by appropriate limiting instructions to the jury.

While it is true that, in insurance coverage suits, extra-contractual claims are often severed from contractual coverage claims, that is generally because the insurance company made a settlement offer. In fact, nearly every case cited by Connecticut General in which separate

5

trials were granted involved a settlement offer. *See, e.g., Karam v. Nationwide Gen. Ins. Co.,* 1999 WL 1240791 (N.D. Tex. Dec. 20, 1999); *Greil v. Geico,* 2001 WL 1148118 (N.D. Tex. Sept. 18, 2001); *Millard,* 847 S.W.2d 668; *State Farm Mut. Auto. Ins. Co. v. Wilborn,* 835 S.W.2d 260 (Tex. App.—Houston 1992, no writ). The existence of a settlement offer would clearly prejudice an insurance company's attempt to argue that the claim was not covered under the insurance contract, and thus in cases where a settlement offer was made, separate trials are nearly always ordered.[2] However, in this case, Connecticut General made no settlement offer to the Astros, so this source of potential prejudice is nonexistent.

While Connecticut General correctly points out that there is no limitation on the ability of the Court to find prejudice in other situations, it has failed to identify any other concrete source of potential prejudice in this case. It has argued that it will have to put on evidence that is unrelated to the contractual claim, such as Connecticut General's claims handling procedures, in order to defend against the extra-contractual claims, but this is true in all cases having more than one cause of action. Evidence relevant to one claim may not be relevant to another claim, but there is no inherent prejudice, and any potential confusion is generally remedied through jury instructions. Connecticut General's assertions that it will suffer some vague prejudice merely because it will be required to defend against both the contractual and extra-contractual claims does not convince the Court that there is a need for separate trials. As the Texas Supreme Court has held, "In the absence of a settlement offer on the entire contract claim, or other compelling circumstances, severance is not required." *Liberty Nat'l Fire Ins. Co. v. Akin,* 927 S.W.2d 627, 630 (Tex. 1996). Thus, because Connecticut General has failed to identify any such compelling

---

[2] In fact, under Texas law, the existence of a settlement offer may mandate separate trials. *See Liberty Nat'l Fire Ins. Co. v. Akin,* 927 S.W.2d 627, 630 (Tex. 1996) (implying that the presence of a settlement offer may make severance of contractual from extra-contractual claims necessary to ensure a fair trial).

circumstances that pose a specific danger of prejudice, the Court will not order separate trials on this ground.

## C. CONCLUSION

Connecticut General has not met its burden to prove that separate trials will promote judicial economy or prevent potential prejudice. Its motion for separate trials is therefore denied. If, however, in the future, Connecticut General discovers a specific piece of evidence, akin to a settlement offer, that would be admissible on the contract claim but not admissible on the extra-contractual claims and would pose a concrete risk of prejudice, it may petition the Court to reconsider its ruling. Thus, the motion for separate trials is **DENIED WITHOUT PREJUDICE TO REFILING**.

Because Connecticut General's motion for separate trials is denied, its motion for abatement of the extra-contractual claims is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

**SIGNED** this 24th day of October, 2006.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**